ACCEPTED
03-15-00061-CV
3913245
THIRD COURT OF APPEALS
AUSTIN, TEXAS
1/27/2015 12:09:37 PM
JEFFREY D. KYLE
CLERK

**03-15-00061-CV**

NO. _____

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

1/27/2015 12:09:37 PM

JEFFREY D. KYLE
Clerk

IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS
AUSTIN, TEXAS

IN RE TELADOC, INC.

Relator.

## PETITION FOR TEMPORARY INJUNCTIVE RELIEF

**JACKSON WALKER L.L.P.**
Matt Dow
State Bar No. 06066500
Dudley D. McCalla
State Bar No. 13354000
100 Congress Avenue, Suite 1100
Austin, Texas  78701
(512) 236-2000
(512) 236-2002 - Fax

12051448v.1 124965/00019

NO. _____

IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS
AUSTIN, TEXAS

In re Teladoc, Inc.

Relator.

## PETITION FOR TEMPORARY INJUNCTIVE RELIEF

TO THE HONORABLE THIRD COURT OF APPEALS:

COMES NOW Teladoc, Inc.("Teladoc") and submits its Petition for Temporary Injunctive Relief pursuant to Tex. Gov't Code 22.221(a) and Tex. R. App. 52, and as grounds therefor would show as follows:

## Identity of Parties and Counsel

Pursuant to Texas Rule of Appellate Procedure 52.3, Relator Teladoc, Inc. ("Teladoc") provides this list of all parties and the names and addresses of all counsel:

| *Relator* | *Real Party in Interest* |
|---|---|
| Teladoc,Inc | Texas Medical Board |

| *Counsel for Teladoc:* | *Counsel for Real Party in Interest:* |
|---|---|
| Matt Dow | Ted Ross |
| Dudley D. McCalla | Assistant Attorney General |
| Jackson Walker L.L.P. | Office of the Attorney General of Texas |
| 100 Congress Avenue, Suite 1100 | Administrative Law Division |
| Austin, Texas 78701 | P. O. Box 12548, Capitol Station |
| | Austin, Texas 78701 |

*Respondent*:

Judge of the 53rd District Court
Travis County, Texas
1000 Guadalupe Street
Austin, Texas 78701

(All judges of Travis County Civil District Courts preside in all such Courts)

## TABLE OF CONTENTS

NAME OF ALL PARTIES AND COUNSEL ............................................... 2

TABLE OF CONTENTS .................................................................... 3

INDEX OF AUTHORITIES ................................................................ 4

STATEMENT OF THE CASE .............................................................. 5

STATEMENT OF JURISDICTION ......................................................... 6

ISSUES PRESENTED ...................................................................... 6

STATEMENT OF FACTS ................................................................... 6

ARGUMENT ................................................................................ 8

PRAYER .................................................................................... 8

CERTIFICATION ........................................................................... 9

CERTIFICATE OF SERVICE ............................................................. 10

APPENDIX: ................................................................................ 11

# INDEX OF AUTHORITIES

**CASES**

Teladoc, Inc. v. TMB and Nancy Leshikar, in her Official Capacity as General Counsel of the Texas Medical Board, Cause No. D-1-GN-11-002115 In the District Court of Travis County, No. 03-13-00211-CV in the Texas Court of Appeals, Third District, at Austin ................*Passim*

**STATUTES AND CODES**

TEX. GOV'T CODE § 2001.023 .................................................................. 7

TEX. GOV'T CODE § 2001.024 .................................................................. 7

TEX. GOV'T CODE § 2001.029 .................................................................. 7

TEX. GOV'T CODE § 2001.033 .................................................................. 7

TEX. GOV'T CODE § 2001.034 .................................................................. 7

TEX. GOV'T CODE § 2001.035 .................................................................. 7

TEX. GOV'T CODE § 2001.038 ........................................................... 5, 6, 8

TEX. ADMIN. CODE CH. 174 ..................................................................... 7

TEX. ADMIN. CODE § 190.8(1)(L)(1)(ii)................................................ 5, 7

**OTHER AUTHORITIES**

F. Scott McCown, Opinion on Temporary Injunction, 1 Tex. Admin. L.J. 16, 27-30 (1992).................................. Appx. 6

# STATEMENT OF THE CASE

This case results from action of the Texas Medical Board ("TMB") adopting an emergency rule on January 16, 2015, amending Rule 190.8(1)(L). (Appx. 1) According to the TMB order adopting the rule,

> "The Board further determined that the December 31, 2015 [sic] ruling by the Third Court of Appeals [in Cause No. 03-13-00211] created an absence of such parameters and requirements, thereby allowing practitioners the ability to prescribe drugs, without ever seeing a patient; thus resulting in imminent peril to public health, safety and welfare." (Appx. 2, Full Board Order)

Relator Teladoc filed suit on January 20, 2015 and the Hon. Gisela Triana, sitting as judge of the 53rd District Court, entered a temporary restraining order on January 20, 2015, and set hearing for temporary injunction for February 2, 2015. (Appx. 3) Judge Triana, joined by Teladoc, thereafter executed a Motion to Transfer Cause No. D-1-GN-15-000238 to this Honorable Court pursuant to Tex. Gov't Code § 2001.038(f). That Motion to Transfer is submitted to this Honorable Court today.

The trial judge's action granting the TRO and executing the Motion to Transfer were and are correct: Relator seeks to enjoin further proceedings in the District Court in Cause NO. D-1-G-15-000238 to protect and enforce the jurisdiction of this Honorable Court in that cause upon transfer of that cause pursuant to Tex. Gov't Code § 2001.038(f).

## STATEMENT OF JURISDICTION

This Court has jurisdiction of this Petition under TEX. GOV'T CODE § 21.221(a) and TEX. GOV'T CODE § 2001.038(f).

## ISSUES PRESENTED

1.    Whether the TMB's Emergency Rule Adopted January 16, 2015, is a Valid Rule.

2.    Should the 53rd District Court of Travis County Conduct a Hearing on Temporary Injunction or Further Proceedings in Cause No. D-1-GN-15-000238 Following Transfer of That Action to This Honorable Court.

## STATEMENT OF FACTS

On January 16, 2015, the TMB adopted an emergency rule designed to prohibit Teladoc physicians from providing to thousands of Texas residents the services Teladoc has been providing to those citizens for approximately nine years, with knowledge of the TMB. (*See* Appx. 1 and 2) By memorandum of January 23, 2015, TMB's General Counsel initially advised the Emergency Rule "was effective on January 16, 2015 and will be in effect for 120 days." By subsequent memorandum of that date, TMB's General Counsel advised the

emergency Rule was not currently in effect or being enforced in light of the Temporary Restraining Order issued on January 20, 2015. (Appx. 4)

TMB adopted the emergency rule without complying with TEX. GOV'T CODE §§ 2001.023, 2001.024, 2001.029, 2001.033, 2001.034, or 2001.035 thereby depriving Teladoc and other members of the public of any opportunity to comment on the emergency rule prior to adoption.

TMB has not agreed to extend the temporary restraining order entered in Cause No. D-1-GN-15-000238 despite having done so in Cause No. D-1-GN-11-002115, the previous litigation which resulted in the judgment of this Honorable Court on December 31, 2014, in No. 03-13-00211-CV. (Appx. 5)

Also on or about January 15, 2015 TMB staff drafted "potential" amendments to Rule 174 (*See* Appx. 1). By memorandum of January 16, 2015, TMB General Counsel indicated the Emergency Rule to 190.8 and potential amendment to Rule 174 will be presented to the Texas Medical Board at meetings on February 12 and 13 for consideration for publication and comment according to the "regular" rulemaking process (*Id.*)

Whether TMB will pursue this "regular" rulemaking process is unknown; any suggestion that an imminent peril or emergency existed between January 16, 2015, and the indicated "regular" rulemaking is beyond arbitrary and capricious.

This Honorable Court has jurisdiction of the Motion to Transfer submitted contemporaneously with this Petition for Temporary Injunctive Relief. The hearing on temporary injunction scheduled for February 2, 2015, would interfere with this Court's exercise of jurisdiction over the action to be transferred pursuant to Tex. Gov't Code § 2001.038(f) and should be enjoined.

## ARGUMENT

TMB's Emergency Rule is invalid. (*See* Appx. 6) Cause NO. D-1-GN-15-000238 should be transferred to this Court. Proceeding with temporary injunction hearing on February 2, 2015 will interfere with the jurisdiction of this Honorable Court. There was and is no emergency or imminent peril justifying the emergency rule. TMB has been aware of Teladoc's services for approximately nine years without pursuing proper rulemaking under the Administrative Procedures Act.

## PRAYER

WHEREFORE PREMISES CONSIDERED, Teladoc, Inc. prays this Honorable Court grant the Motion to Transfer submitted this date and issue its injunction to protect its jurisdiction by enjoining the Judge of the 53rd District Court of Travis County, Texas from proceeding with hearing on temporary injunction on February 2, 2015 or with other proceedings in Cause No. D-1-GN-15-000238 until further order of this Honorable Court.

Teladoc, Inc. prays for such other and further relief to which it justly may be entitled.

## CERTIFICATION

I, Dudley D. McCalla, certify I have reviewed this Petition for Temporary Injunctive Relief and concluded that every factual statement in the Petition is supported by competent evidence included in the appendix.

Respectfully submitted,

JACKSON WALKER L.L.P.


By: /s/ *Dudley D. McCalla*

Dudley D. McCalla
State Bar No. 13354000
Matt Dow
State Bar No. 06066500
100 Congress, Suite 1100
Austin, TX 78701
(512) 236-2000
(512) 236-2002 - Fax


**ATTORNEYS FOR TELADOC, INC.**

# CERTIFICATE OF SERVICE

This is to certify that on this 27th day of January, 2015, a true and correct copy of the foregoing document was served by fax and email on the parties listed below:

Ted Ross
Office of the Attorney General of Texas
P.O. Box 12548
Austin, Texas 78711-2548
Fax: 512-474-1062

Attorney for TMB

_/s/ Dudley D. McCalla_____
Dudley D. McCalla

NO. _____

IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS
AUSTIN, TEXAS

In re Teladoc, Inc.

Relator.

# APPENDIX TO PETITION FOR TEMPORARY INJUNCTIVE RELIEF

1.  Texas Medical Board General Counsel Memorandum of January 16, 2015, with attachment

2.  Board Order of January 16, 2015

3.  Temporary Restraining Order in No. D-1-GN-15-000238

4.  Texas Medical Board General Counsel Memoranda of January 23, 2015

5.  Judgment of this Court in No. 03-13-00211-CV

6.  Scott McCown Opinion

7.      TEX. GOV'T CODE §§ 2001.023

8.      TEX. GOV'T CODE §§ 2001.024

9.      TEX. GOV'T CODE §§ 2001.029

10.     TEX. GOV'T CODE §§ 2001.033

11.     TEX. GOV'T CODE §§ 2001.034

12.     TEX. GOV'T CODE §§ 2001.035

13..    TEX. GOV'T CODE §§ 2001.038

# APPENDIX 1



# TEXAS MEDICAL BOARD

TO:         Telemedicine Stakeholders
            Interested Parties

FROM:       Scott Freshour, General Counsel

DATE:       January 16, 2015

SUBJECT:    Texas Medical Board's Notification of an Emergency Rule

---

Dear Telemedicine Stakeholders and Interested Parties:

Today the Texas Medical Board (Board) adopted an amendment on an emergency basis to Rule 190.8(1)(L), relating to Violation Guidelines. The purpose of the emergency amendment is to protect the public health and welfare by clarifying that a face-to-face visit or in-person evaluation is required before a practitioner can issue a prescription for drugs. Attached is a copy of Rule 190.8(1)(L), as amended. This emergency rule is effective immediately. The same version of the rule will proceed through the regular rulemaking process.

Please know that in adopting this emergency rule, the Board was cognizant of the input from the Telemedicine Stakeholders concerning Rule 174 related to the issue of an "established medical site" and the provision of mental health services. In response to this input, Board Staff has drafted potential amendments to Rule 174, which are also included as an attachment for your review.

The two rules, 190.8(1)(L) and 174, will be presented at the February 12 and 13, 2015 Board meeting for consideration for publication and comment according to the regular rulemaking process. Board Staff has endeavored to make the two rules compatible to ensure patient safety while allowing greater access to mental health services via telemedicine.

The Board looks forward to your input on these issues.


C:     Mari Robinson, Executive Director

TEXAS MEDICAL BOARD RULES
Texas Administrative Code, Title 22, Part 9
**Proposed Changes – Emergency Rule**

**Chapter 190**                                                    **Proposed to Board**
Disciplinary Guidelines
Page 1 of 2

**190.8 Violation Guidelines.** When substantiated by credible evidence, the following acts, practices, and conduct are considered to be violations of the Act. The following shall not be considered an exhaustive or exclusive listing.

(1) Practice Inconsistent with Public Health and Welfare. Failure to practice in an acceptable professional manner consistent with public health and welfare within the meaning of the Act includes, but is not limited to:

*(A) - (K) no change*

(L) prescription of any dangerous drug or controlled substance without first establishing a [proper professional] defined physician-patient relationship[ with the patient].

(i) A [proper] defined physician-patient relationship must include, at a minimum[ requires]:

(I) establishing that the person requesting the medication is in fact who the person claims to be;

(II) establishing a diagnosis through the use of acceptable medical practices[ such as], which includes documenting and performing:

(-a-) patient history[;];

(-b-) mental status examination[;];

(-c-) physical examination that must be performed by either a face-to-face visit or in-person evaluation as defined in Section 174.2(3) and (4) of this title[;]. The requirement for a face-to-face or in-person evaluation does not apply to mental health services, except in cases of behavioral emergencies, as defined by Texas Health and Safety Code, Section 415.253; and

(-d-) appropriate diagnostic and laboratory testing.

(III) An online questionnaire or questions and answers exchanged through email, electronic text, or chat or telephonic evaluation of

or consultation with a patient are inadequate to establish a defined physician-patient relationship[ by questionnaire is inadequate];

([HH]IV) discussing with the patient the diagnosis and the evidence for it, the risks and benefits of various treatment options; and

([IV]V) ensuring the availability of the licensee or coverage of the patient for appropriate follow-up care.

*Remainder of rule unchanged*

**§174.1. Purpose.**
Pursuant to §153.001 and §157.001 of the Medical Practice Act, the Board is authorized to adopt rules relating to the practice of medicine. This chapter is promulgated to establish standards for the use of the Internet and the provision of telemedicine medical services by physicians who are licensed to practice medicine in this State. This chapter does not apply to out-of-state telemedicine licenses issued by the Board pursuant to §151.056 of the Act and §172.12 of this title (relating to Out-of-State Telemedicine License), federally qualified health centers (FQHCs), or to consultations provided by health insurance help lines.

**§174.2. Definitions.**
The following words and terms, when used in this chapter shall have the following meanings unless the context indicates otherwise.
(1) Distant site provider--A physician or a physician assistant or advanced practice nurse who is supervised by and has delegated authority from a licensed Texas physician, who uses telemedicine to provide health care services to a patient in Texas. Distant site providers must be licensed in Texas.
(2) Established medical site--A location where a patient will present to seek medical care where there is a patient site presenter and sufficient technology and medical equipment to allow for an adequate physical evaluation, as appropriate for the patient's presenting complaint. It requires **establishing** a defined physician-patient relationship**, as defined by §190.8(1)(L) of this title.** A patient's private home is not considered an established medical site, ~~except when the care provided to the patient is limited to mental health services~~ **except as provided in §174.6(d).**
(3) Face-to-face visit--An evaluation performed on a patient where the provider and patient are both at the same physical location or where the patient is at an established medical site.
(4) In-person evaluation--A patient evaluation conducted by a provider who is at the same physical location as the location of the patient.
(5) Medium--Any mechanism of information transfer including electronic means.
(6) Patient site location--The patient site location is where the patient is physically located.
(7) Patient site presenter--The patient site presenter is the individual at the patient site location who introduces the patient to the distant site physician for examination and to whom the distant site physician may delegate tasks and activities. A patient site presenter must be:
> (A) licensed or certified in this state to perform health care services or a qualified mental health professional-community services (QMHP-CS) as defined in 25 TAC §412.303(48); and
> (B) delegated only tasks and activities within the scope of the individual's licensure or certification.
(8) Person--An individual unless otherwise expressly made applicable to a partnership, association, or corporation.
(9) Physician-patient e-mail--An interactive communication via an interactive electronic text messaging system between a physician, or their medical staff, and patients within a professional relationship in which the physician has taken on an explicit measure of responsibility for the patient's care.
(10) Telemedicine medical service--The practice of medical care delivery, initiated by a distant site provider, who is physically located at a site other than the site where the patient is located, for the purposes of evaluation, diagnosis, consultation, or treatment which requires the use of

advanced telecommunications technology that allows the distant site provider to see and hear the patient in real time.

**(11) Group or Institutional Setting- includes, but is not limited to, residential treatment facilities, half-way houses, jails, nursing homes, group homes, rehabilitation centers, and assisted living facilities.**

**§174.3. Telemedicine Medical Services.**
(a) All physicians that use telemedicine medical services in their practices shall adopt protocols to prevent fraud and abuse through the use of telemedicine medical services. These standards must be consistent with those established by the Health and Human Services Commission pursuant to §531.02161 of the Government Code.

(b) In order to establish that a physician has made a good faith effort in the physician's practice to prevent fraud and abuse through the use of telemedicine medical services, the physician must implement written protocols that address the following:

    (1) authentication and authorization of users;

    (2) authentication of the origin of information;

    (3) the prevention of unauthorized access to the system or information;

    (4) system security, including the integrity of information that is collected, program integrity, and system integrity;

    (5) maintenance of documentation about system and information usage;

    (6) information storage, maintenance, and transmission; and

    (7) synchronization and verification of patient profile data.

**§174.5. Notice to Patients.**
(a) Privacy Practices.

    (1) Physicians that communicate with patients by electronic communications other than telephone or facsimile must provide patients with written notification of the physicians' privacy practices prior to evaluation or treatment. In addition, a good faith effort must be made to obtain the patient's written acknowledgement, including by e-mail, of the notice.

    (2) The notice of privacy practices shall include language that is consistent with federal standards under 45 CFR Parts 160 and 164 relating to privacy of individually identifiable health information.

(b) Limitations of Telemedicine. Physicians who use telemedicine medical services must, prior to providing services, give their patients notice regarding telemedicine medical services, including the risks and benefits of being treated via telemedicine, how to receive follow-up care or assistance in the event of an adverse reaction to the treatment or in the event of an inability to communicate as a result of a technological or equipment failure. A signed and dated notice, including an electronic acknowledgement, by the patient establishes a presumption of notice.

(c) Necessity of In-Person Evaluation. When, for whatever reason, the telemedicine modality in use for a particular patient encounter is unable to provide all pertinent clinical information that a health care provider exercising ordinary skill and care would deem reasonably necessary for the practice of medicine at an acceptable level of safety and quality in the context of that particular medical encounter, then the distant site provider must make this known to the patient prior to the conclusion of the live telemedicine encounter and advise ~~and counsel~~ the patient, prior to the

conclusion of the live telemedicine encounter, regarding the need for the patient to obtain an additional in-person medical evaluation reasonably able to meet the patient's needs.

(d) Complaints to the Board. Physicians that use telemedicine medical services must provide notice of how patients may file a complaint with the Board on the physician's website or with informed consent materials provided to patients prior to rendering telemedicine medical services. Written content and method of the notice must be consistent with §178.3 of this title (relating to Complaint Procedure Notification).

**§174.6. Telemedicine Medical Services Provided at an Established Medical Site.**

(a) Telemedicine medical services provided at an established medical site may be used for all patient visits, including initial evaluations to establish a ~~proper~~ **defined** physician-patient relationship between a distant site provider and a patient.

(b) For new conditions, a patient site presenter must be reasonably available onsite at the established medical site to assist with the provision of care. It is at the discretion of the distant site physician if a patient site presenter is necessary for follow-up evaluation or treatment of a previously diagnosed condition.

> (1) A distant site provider may delegate tasks and activities to a patient site presenter during a patient encounter.
>
> (2) A distant site provider delegating tasks to a patient site presenter shall ensure that the patient site presenter to whom delegation is made is properly supervised.

(c) If the only services provided are related to mental health **services,** a patient site presenter is not required, except in cases **of behavioral emergencies, as defined by Texas Health and Safety Code, Section 415.253**

**(d) For the purposes of this Chapter the following shall be considered to be an established medical site:**

> **(1) The patient's home, including a group or institutional setting where the patient is a resident, if the medical services being provided in this setting are limited to mental health services;**
>
> **(2) For medical services, other than mental health services, to be provided at the patient's home, including a group or institutional setting where the patient is a resident, the following requirements must be met:**
>> **(A) a patient site presenter is present;**
>> **(B) there is a defined physician-patient relationship as set out in Section 174.8 of this title;**
>> **(C) the patient site presenter has sufficient communication and remote medical diagnostic technology to allow the physician to carry out an adequate physical examination appropriate for the patient's presenting condition while seeing and hearing the patient in real time. All such examinations will be held to the same standard of acceptable medical practices as those in traditional clinical settings; and**
>> **(D) An online questionnaire or questions and answers exchanged through email, electronic text, or chat or telephonic evaluation of or consultation with a patient do not meet the requirements for subsection (C).**

**§174.7. Telemedicine Medical Services Provided at Sites other than an Established Medical Site.**

(a) A distant site provider who provides telemedicine medical services at a site other than an established medical site for a patient's previously diagnosed condition must either:

 (1) see the patient one time in a face-to-face visit before providing telemedicine medical care; or

 (2) see the patient without an initial face-face to visit, provided the patient has received an in-person evaluation by another physician who has referred the patient for additional care and the referral is documented in the medical record.

(b) Patient site presenters are not required for pre-existing conditions previously diagnosed by a physician through a face-to-face visit.

(c) All patients must be seen by a physician for an in-person evaluation at least once a year.

(d) Telemedicine medical services may not be used to treat chronic pain with scheduled drugs at sites other than medical practice sites.

(e) A distant site provider may treat an established patient's new symptoms which are unrelated to a patient's preexisting condition provided that the patient is advised to see a physician in a face-to-face visit within 72 hours. A distant site provider may not provide continuing telemedicine medical services for these new symptoms to a patient who is not seen within 72 hours. If a patient's symptoms are resolved within 72 hours, such that continuing treatment for the acute symptoms is not necessary, then a follow-up face-to-face visit is not required.

**§174.8. Evaluation and Treatment of the Patient.**

(a) Evaluation of the Patient. Distant site providers who utilize telemedicine medical services must ensure that a ~~proper~~ **defined** physician-patient relationship is established which at a minimum includes:

 (1) establishing that the person requesting the treatment is in fact who **the person** ~~he/she~~ claims to be;

 (2) establishing a diagnosis through the use of acceptable medical practices, including **documenting and performing** patient history, mental status examination, **and physical examination that must be performed as part of a face-to-face or in-person evaluation as defined in Section 174.2(3) and (4) of this title. The requirement for a face-to-face or in-person evaluation does not apply to mental health services, except in cases of behavioral emergencies, as defined by Texas Health and Safety Code, Section 415.253,** ~~physical examination (unless not warranted by the patient's mental condition)~~ and appropriate diagnostic and laboratory testing to establish diagnoses, as well as identify underlying conditions or contra-indications, or both, to treatment recommended or provided;

 (3) discussing with the patient the diagnosis and the evidence for it, the risks and benefits of various treatment options; and

 (4) ensuring the availability of the distant site provider or coverage of the patient for appropriate follow-up care.

(b) Treatment. Treatment and consultation recommendations made in an online setting, including issuing a prescription via electronic means, will be held to the same standards of ~~appropriate~~ **acceptable medical practices** as those in traditional in-person clinical settings.

(c) **An online questionnaire or questions and answers exchanged through email, electronic text, or chat or telephonic evaluation of or consultation with a patient are inadequate to**

**establish a defined physician-patient relationship.** ~~An on-line or telephonic evaluation solely by questionnaire does not constitute an acceptable standard of care.~~

**§174.9. Technology and Security Requirements.**
(a) At a minimum, advanced communication technology must be used for all patient evaluation and treatment conducted via telemedicine.
(b) Adequate security measures must be implemented to ensure that all patient communications, recordings and records remain confidential.
(c) Electronic Communications.
> (1) Written policies and procedures must be maintained when using electronic mail for physician-patient communications. Policies must be evaluated periodically to make sure they are up to date. Such policies and procedures must address:
>> (A) privacy to assure confidentiality and integrity of patient-identifiable information;
>> (B) health care personnel, in addition to the physician, who will process messages;
>> (C) hours of operation and availability;
>> (D) types of transactions that will be permitted electronically;
>> (E) required patient information to be included in the communication, such as patient name, identification number and type of transaction;
>> (F) archival and retrieval; and
>> (G) quality oversight mechanisms.

(2) All relevant patient-physician e-mail, as well as other patient-related electronic communications, must be stored and filed in the patient's medical record.
(3) Patients must be informed of alternative forms of communication for urgent matters.

**§174.10. Medical Records for Telemedicine Medical Services.**
(a) Medical records must be maintained for all telemedicine medical services. Both the distant site provider and the patient site presenter must maintain the records created at each site unless the distant site provider maintains the records in an electronic health record format.
(b) Distant site providers must obtain an adequate and complete medical history for the patient prior to providing treatment and must document this in the medical record.
(c) Medical records must include copies of all relevant patient-related electronic communications, including relevant patient-physician e-mail, prescriptions, laboratory and test results, evaluations and consultations, records of past care and instructions. If possible, telemedicine encounters that are recorded electronically should also be included in the medical record.

**§174.11. On-call Services.**
Physicians, who are of the same specialty and provide reciprocal services, may provide on-call telemedicine medical services for each other's active patients.

**§174.12. State Licensure.**
Physicians who treat and prescribe through advanced communications technology are practicing medicine and must possess appropriate licensure in all jurisdictions where their patients presently reside. An out-of-state physician may provide episodic consultations without a Texas medical

license, as provided in Texas Occupations Code, §151.056 and §172.12(f) of this title (relating to Out-of-State Telemedicine License-Exemptions).

APPENDIX 2

# THE TEXAS MEDICAL BOARD

## ORDER ADOPTING
## EMERGENCY RULE

22 Texas Administrative Code
Chapter 190.8(1)(L)(i)(II)
Violation Guidelines

The Texas Medical Board (Board) adopts an amendment on an emergency basis to Chapter 190, relating to Disciplinary Guidelines, 190.8, Violation Guidelines.

The Board adopts an amendment on an emergency basis to Chapter 190, relating to Disciplinary Guidelines, Rule190.8, Violation Guidelines. The emergency amendment to Rule190.8 adds language to paragraph (1)(L) in order to clarify a "defined physician-patient relationship" and the requirements for establishing same before prescribing drugs. The amendment clearly defines the minimum elements that are required to establish a defined physician-patient relationship. The elements include a physical examination that must be performed either by a face-to-face visit or an in-person evaluation, as those terms are defined under existing board rules.

Rule 190.8(1)(L) was originally challenged by Teladoc in State District Court in Travis County, Texas. Teladoc claimed that a June 2011 letter, from Nancy Leshikar (former General Counsel of the Board) to Teladoc, stating that Teladoc's business model of providing medical services, including prescribing medications/drugs without establishing a physician-patient relationship through a face-to-face visit, was in violation of Rule 190.8(1)(L), constituted improper rulemaking and was invalid. The State District found in favor of the Board and determined that the June 2011 letter was a restatement of long-standing law and policy of the Board. Teladoc appealed the District Court ruling to the Texas Court of Appeals, Third District, under Cause No. 03-13-00211-CV, *Teladoc, Inc., Appellant vs. Texas Medical Board and Nancy Leshikar, in her Official Capacity as General Counsel of the Texas Medical Board, Appellees*. Again, Teladoc claimed that a June 2011 letter, from Nancy Leshikar (former General Counsel of the Board) to Teladoc, constituted improper rule making and was invalid, as it was not properly promulgated under the Texas Government Code. On December 31, 2014, the Third Court of Appeals ruled that the June 2011 letter interpreting Board Rule 190.8(1)(L)(i)(II) indeed constituted improper rulemaking and was invalid.

The amendment is adopted on an emergency basis under §2001.034 of the Texas Government Code. The Board has determined that, in order to protect the public health and welfare, it is vital to establish a defined physician-patient relationship before prescribing drugs. The Board further determined that the December 31, 2015 ruling by the Third Court of Appeals created an absence of such parameters and requirements, thereby allowing practitioners the ability to prescribe drugs, without ever seeing a patient; thus resulting in imminent peril to public health, safety and welfare.

The Board finds that prescribing drugs to a patient without first evaluating and examining the patient in a face-to-face visit or in-person evaluation makes it impossible for a practitioner to insure proper and accurate diagnosis and treatment; to insure proper prescribing practices are followed; to insure the drugs prescribed are therapeutic, i.e., the medications prescribed are actually needed and/or proper for the condition (which has never been verified by an in-person evaluation or face-to-face visit); and/or prevent overuse/abuse of drugs of any kind.

The absence of a required defined physician-patient relationship further results in a complete lack of review of patient records and allows a patient with a subjective complaint, not verified, to simply call any practitioner and receive a prescription drug without an in-person evaluation or face-to-face visit. This significantly increases the risk of misdiagnosis, mismanagement of patients, over-prescribing, inappropriate prescribing, drug diversion and drug abuse. Even with drugs, such as antibiotics, there is an immediate threat of incorrect and injudicious antibiotic use, which can result in bacterial overgrowth that thereby lead to the "superbugs, such as MRSA and other antibiotic resistant organisms.

Prescribing drugs without a face-to-face visit or in-person evaluation is not the generally accepted medical practice and does not meet the standard of care. Without requirements for a practitioner to examine and evaluate a patient, by a face-to-face visit or in-person evaluation, prior to prescribing drugs, seriously compromises and undermines the Board's statutory mandate to protect the public health and welfare.

The amendment to Rule 190.8(1)(L) insures patient safety by setting forth specific parameters and requirements for a practitioner to establish a defined physician-patient relationship prior to prescribing drugs and, thereby, removes the current imminent peril to the public health, safety and welfare. The amendment to Rule 190.8(1)(L) will protect patient health and safety by requiring the use of acceptable medical practices that comply with state law and medical board rules, while still providing ample access to medical treatment, via traditional medicine or telemedicine.

This amendment to Rule 190.8(1)(L) does not expand the requirements for treating patients, via traditional medicine or telemedicine, but rather, clarifies existing requirements for prescribing and is consistent with the board's existing rules related to acceptable medical practices, the current requirements for medical record documentation of patient evaluations and examinations, and existing requirements for the practice of telemedicine.

Based on the Third Court of Appeal's ruling, on January 16, 2015, at an emergency meeting of the Board, the Board adopted an amendment to Rule190.8(1)(L) relating to Violation Guidelines, to be effective immediately. The Notice of Adoption and emergency Rule 190.8(1)(L) were filed with the Secretary of State on January 16, 2015 to be published in the Texas Register.

The amendment is adopted on an emergency basis under §2001.034 of the Texas Government Code and under the authority of Texas Occupations Code Annotated, §§153.001, which provides authority for the Board to adopt rules and bylaws as necessary to govern its own proceedings, perform its duties, regulate the practice of medicine in this state, and enforce this subtitle.

The Board certifies that the emergency adoption of the proposed rules has been reviewed by legal counsel and found to be a valid exercise of the agency's legal authority.

It is therefore ORDERED by the Board that the proposed rules are ADOPTED on an emergency basis, as stated above. A copy of the amended rules is incorporated in this ORDER.

Signed and entered as of January 16, 2015.

Michael Arambula, M.D., R.Ph., President
Texas Medical Board

# APPENDIX 3

Filed In The District Court
of Travis County, Texas
on_____1-20-15
at_____3:55____ᴘᴍ.
Velva L. Price, District Clerk

Cause No. D-1-GN-15-000238

| | | |
|---|---|---|
| TELADOC, INC., | § | IN THE DISTRICT COURT |
|     Plaintiff, | § | |
| v. | § | 53rd JUDICIAL DISTRICT |
| | § | |
| TEXAS MEDICAL BOARD, | § | |
|     Defendant. | § | TRAVIS COUNTY, TEXAS |

## TEMPORARY RESTRAINING ORDER

On this day, the Court heard the application for temporary restraining order of Plaintiff, Teladoc, Inc. Plaintiff and Defendant appeared by and through their attorneys of record. After considering the pleadings, the affidavit and attachments in support of the pleadings, and the argument of counsel, the Court is of the opinion that the application for a temporary restraining order should be granted for the following reasons: (i) in accordance with Tex. Gov't. Code § 2001.038, Plaintiff has asserted a valid cause of action for declaratory relief with regard to the invalidity of the Texas Medical Board's emergency amendment to, 22 T.A.C. 190.8(1)(L) as set out in the General Counsel's memo of January 16, 2015; (ii) Plaintiff has shown a probable right to a judgment because no imminent peril to public health, safety or welfare exists and Defendant did not follow the requirements of Texas Administrative Procedure Act (APA) § 2001.034(a)(1)-(2), (b), and (d) and so therefore the rule is invalid; and (iii) Plaintiff will suffer immediate and irreparable harm because the proposed enforcement of the emergency rule will have an immediate and severe impact on Teladoc's ability to do business in Texas. The Court further finds that the status quo will be preserved by the entry of this order.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Plaintiff's Application for Temporary Restraining Order be and is hereby GRANTED;

ACCORDINGLY, THE TEXAS MEDICAL BOARD, and its agents, servants, employees, and attorneys be and hereby are, ARE HEREBY ORDERED to desist and refrain



from implementing, communicating and enforcing the amendments to Rule 190.8(1)(L) as stated in the memorandum from the Texas Medical Board's General Counsel Scott Freshour dated January 16, 2015 until further order of this Court.

IT IS FURTHER ORDERED THAT Plaintiff shall execute and file with the clerk of this Court a bond, or cash deposit in lieu of bond, in the amount of $ 500ᵒᵒ in conformity with Rule 684 of the Texas Rules of Civil Procedure, payable to Defendant and conditioned that Plaintiff will abide by the decision which may be made in the cause, and that Plaintiff will pay all sums of money and costs that may be adjudged against it if the temporary restraining order shall be dissolved in whole or in part.

The clerk shall forthwith, when so requested by Plaintiff and after Plaintiff has filed the bond described above, issue a writ of temporary restraining order in conformity with the law and the terms of this Order.

IT IS FURTHER ORDERED that, unless extended by agreement of the parties or changed by further order of this Court, this Order become effective only at such time as Teladoc files with the clerk of this court a bond in the amount of $ 500ᵒᵒ .

IT IS FURTHER ORDERED that Plaintiff's application for a temporary injunction will be heard before this court on _Monday_, ~~January~~ Febuey 2, 2015, at 9 ᵒᵒ o'clock a.m.

IT IS FURTHER ORDERED that this order expires no later than fourteen days after issuance or until earlier amended by order of the Court, whichever occurs first.

Signed and issued this 20 day of January, 2015, at 3:43 o'clock a.m.

_[signature]_
JUDGE PRESIDING

APPENDIX 4



# TEXAS MEDICAL BOARD

TO:         Telemedicine Stakeholders
            Interested Parties

FROM:       Scott Freshour, General Counsel

DATE:       January 23, 2015

SUBJECT:    Requesting your Comments on Rules 190.8(1)(L) and 174.

---

Dear Telemedicine Stakeholders and Interested Parties:

As you know, the Texas Medical Board ("the Board") had an emergency meeting on January 16, 2015 adopting an amendment to Rule 190.8(1)(L). This rule was effective on January 16, 2015 and will be in effect for 120 days.

In the notice TMB provided on January 16, 2015 regarding the emergency rule, you were also furnished two proposed rules, 190.8(1)(L) and several sections of 174 (telemedicine rules). These rules will be considered for publication and comment at the February 12-13 Board meeting. If you wish to submit comments to be considered at the February 12-13 Board meeting, such comments must be submitted by February 6, 2015, to Rita Chapin, Legal Assistant, General Counsel's Office, Texas Medical Board, P.O. Box 2018, Austin, TX 78768-2018, or e-mail comments to: rules.development@tmb.state.tx.us.

If the proposed rule is approved for publication by the Board in February, there will be a thirty (30) day comment period following publication of the rules in the Texas Register.

The Board looks forward to your input on these issues.


C:     Mari Robinson, Executive Director



# TEXAS MEDICAL BOARD

TO:        Telemedicine Stakeholders
           Interested Parties

FROM:      Scott Freshour, General Counsel

DATE:      January 23, 2015

SUBJECT:   Clarification on today's earlier communication

---

Dear Telemedicine Stakeholders and Interested Parties:

The following is a clarification of the memo recently sent to you regarding rules comments. Please understand that emergency Rule 190.8(1)(L) is not currently in effect or being enforced as the 53rd Judicial District Court issued a Temporary Restraining Order regarding the rule on January 20, 2015. The purpose of the prior communication, which was to solicit comments on proposed rules to be considered at the February 13, 2015 Board meeting, inadvertently omitted information related to the Temporary Restraining Order.


The Board looks forward to your input at the February Board meeting.


C:     Mari Robinson, Executive Director

Location Address:                    Mailing Address              Phone 512.305.7010
333 Guadalupe, Tower 3, Suite 610    MC-251, P.O. Box 2018        Fax 512.305.7051
Austin, Texas 78701                  Austin, Texas 78768-2018     www.tmb.state.tx.us

APPENDIX 5

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## JUDGMENT RENDERED DECEMBER 31, 2014

## NO. 03-13-00211-CV

### Teladoc, Inc., Appellant

### v.

### Texas Medical Board and Nancy Leshikar, in her Official Capacity as General Counsel of the Texas Medical Board, Appellees

### APPEAL FROM 353RD DISTRICT COURT OF TRAVIS COUNTY BEFORE CHIEF JUSTICE JONES, JUSTICES PEMBERTON AND FIELD REVERSED AND RENDERED -- OPINION BY JUSTICE PEMBERTON

This is an appeal from the judgment signed by the district court on March 4, 2013. Having reviewed the record and the parties' arguments, the Court holds that there was reversible error in the district court's judgment. Therefore, the Court reverses the district court's judgment and renders summary judgment declaring that Texas Medical Board's pronouncements regarding Rule 190.8(1)(L)(i)(II) contained in its June 2011 letter are a "rule" under the Administrative Procedure Act and, therefore, invalid under section 2001.035 of that Act. The appellees shall pay all costs relating to this appeal, both in this Court and the court below.

# APPENDIX 6

| | | |
|---|---|---|
| NATIONAL ASSOCIATION OF | § | IN THE DISTRICT COURT |
| INDEPENDENT INSURERS, | § | |
| ET AL., | § | |
| Plaintiffs | § | |
| V. | § | |
| STATE BOARD OF INSURANCE | § | |
| Defendant | § | |
| | § | OF TRAVIS COUNTY, TEXAS |
| and | § | |
| OFFICE OF PUBLIC INSURANCE | § | |
| COUNSEL, | § | |
| | § | |
| Defendant-Intervenor | § | |
| and | § | |
| COMMITTEE FOR A JUST AUTO | § | |
| INSURANCE, ET AL., | § | |
| | § | |
| Defendant-Intervenor | § | 345TH JUDICIAL DISTRICT |

## OPINION ON TEMPORARY INJUNCTION

### The Question Presented

Pursuant to the Administrative Procedure and Texas Register Act (APTRA), TEX. REV. CIV. STAT. ANN. art. 6252-13a, §12 (Vernon Supp. 1991), plaintiffs ask the court to declare invalid an emergency rule adopted by the State Board of Insurance and to temporarily enjoin its enforcement, pending a trial on the merits. Because the court finds as a matter of law that there is no emergency, and that the challenged rule addresses more than the emergency cited by the board, the court will grant the relief requested.

The facts can be briefly stated. In 1981 the legislature passed the Texas Safety Responsibility Act, which required as a condition of driving certain financial wherewithal to compensate an accident victim. Evidence of

16

financial responsibility could be satisfied by obtaining liability insurance in a certain minimum amount. Failure to maintain financial responsibility was a misdemeanor offense. In 1991 the legislature strengthened the law by passing the Texas Motor Vehicle Safety-Responsibility Act. Under the amended law, failure to comply with the act was still a misdemeanor, but the possible fine was increased. More important, proof of financial responsibility was made a prerequisite to obtaining or renewing vehicle registration, a driver's license, and a safety inspection sticker. The act became effective September 1. Some three million drivers needed to obtain insurance to comply with the strengthened law.

A hurdle to obtaining insurance for these drivers is an underwriting guideline of many companies: If you should have had insurance in the past and did not, then many companies infer that you are irresponsible and will not insure you. The State Board of Insurance has promulgated an emergency rule prohibiting the use of this underwriting guideline. At issue in this case is the validity of the board's rule.

### Structure of APTRA

The legislature has delegated certain of its powers to make rules to various agencies. Through APTRA the legislature requires those agencies to follow certain careful, deliberate procedures before making rules. These procedures are designed to ensure good rules.

17

Section 1 of APTRA declares that it is the public policy of this state to provide for public participation in rulemaking and to provide adequate public notice of proposed rules to ensure public participation. Section 5(a) requires thirty days notice of a proposed rule. Section 5(a) further requires that the "notice must include:"

(1)    a brief explanation of the proposed rule;

(2)    the text of the proposed rule, except any portion omitted as provided in Section 6(c) of this Act, prepared in a manner to indicate the words to be added or deleted from the current text, if any;

(3)    a statement of the statutory or other authority under which the rule is proposed to be promulgated, including a concise explanation of the particular statutory or other provisions under which the rule is proposed, and a certification that the proposed rule has been reviewed by legal counsel and found to be within the agency's authority to adopt;

(4)    a fiscal note showing the name and title of the officer or employee responsible for preparing or approving it and stating for each year for the first five years that the rule will be in effect;

(A)    the additional estimated cost to the state and to local governments expected as a result of enforcing or administering the rule;

(B)    estimated loss or increase in revenue to the state or to local governments as a result of enforcing or administering the rule; and

(C)    estimated loss or increase in revenue to the state or to local governments as a result of enforcing or administering the rule; and

(D)    if applicable, that enforcing or administering the rule will have no foreseeable implications in any of the preceding respects;

(5)    a public benefit-cost note showing the name and title of the officer or employee responsible for preparing or approving it and stating for each year for the first five years that the rule will be in effect;

(A)    the public benefits to be expected as a result of adoption of the proposed rule; and

(B)    the probable economic cost to persons who are required to comply with the rule;

(6)    the local employment impact statement prepared under Section 4A of this Act, if required;

(7)    a request for comments on the proposed rule from any interested person; and

(8)    any other statement required by law.

Section 5(c) provides an opportunity for the public to be heard:

(c) Prior to the adoption of any rule, an agency shall afford all interested persons reasonable opportunity to submit data, views, or arguments, orally or in writing. In the case of substantive rules, opportunity for public hearing must be granted if requested by at least 25 persons, by a governmental subdivision or agency, or by an association having at least 25 members. The agency shall consider fully all written and oral submissions concerning the proposed rule. On adoption of a rule, the agency, if requested to do so by an interested person either prior to adoption or within 30 days after adoption, shall issue a concise statement of the principal reasons for and against its adoption, incorporating in the statement its reasons for overruling the considerations urged against its adoption.

This subdivision does more than merely provide an opportunity to comment; it requires an agency to _fully consider_ all comments. The agency must even explain why it has rejected any comments.

Section 5(c-1) goes further to require that the final order adopting a rule include:

(1) a reasoned justification of the rule, including a summary of comments received from parties interested in the rule and showing the names of any interested group or association offering comment on the rule and whether they were for or against its adoption, and also including a restatement of the rule's factual bases and the reasons why the agency disagrees with party submissions and proposals;

(2) a concise restatement of the particular statutory provisions under which the rule is adopted and of how the agency interprets these provisions as authorizing or requiring the rule; and

(3) a certification that the rule, as adopted, has been reviewed by legal counsel and found to be a valid exercise of the agency's legal authority.

This requirement ensures that an agency carefully thinks through both the policy and the law in support of a rule.

None of this careful, deliberate process was employed here. Instead, the board used its emergency authority found in section 5(d), which provides:

(d) If an agency finds that an imminent peril to the public health, safety, or welfare or a requirement of state or federal law requires adoption of a rule on fewer than 30 days' notice and states in writing its reasons for that finding, it may proceed without prior notice or hearing or on any abbreviated notice and hearing that it finds practicable to adopt an emergency rule. The agency must set forth the requisite finding in the preamble to the rule. The rule may be effective for a period of not longer than 120 days renewable once for a period not exceeding 60 days, but the adoption of an identical rule under Subsection (a) and (c) of this section is not precluded. An emergency rule adopted under the provisions of this subsection, and the agency's written reasons for the adoption, shall be filed in the office of the secretary of state for publication in the Texas Register.

An emergency rule can only be promulgated if a state or federal law expressly directs an agency to promulgate rules by a date less than 30 days from when the law is passed or if there is an imminent peril to public health, safety, or welfare. No state or federal law directed the board to promulgate the challenged rule, much less to do so in less than 30 days. At issue then in this case is whether there is "an imminent peril to the public health, safety, or welfare" that justifies the adoption of the challenged rule on an emergency basis.

### Finding an Imminent Peril

Before it makes an emergency rule, an agency must find as a fact that there is "an imminent peril to the public health, safety, or welfare". The preamble to the rule must contain that finding. The finding must be more than a mere recitation that there is an imminent peril. Subdivision (d) of section 5 requires an agency to give "its reasons" for the finding. The legislature requires an agency to state its reasons to force the agency to consider whether there really is an emergency, and to give the judicial branch a means to review an agency's finding. *See Charter Medical-Dallas, Inc. v. Texas Health Facilities Comm'n*, 656 S.W.2d 928, 937 (Tex. App.--Austin 1983).

When reviewing a finding, the court should not look beyond the face of the emergency rule for the reasons supporting the finding. *See Methodist Hospitals of Dallas v. Texas Industrial Accident Board*, 978 S.W.2d 651 (Tex. App.--Austin 1990, no writ). Subdivision (d) requires all reasons to be stated. No unstated reason can be offered to justify an emergency rule.

20

21

The court can look beyond the face of the rule for evidence that supports the finding, even if it was not before the agency. Particularly in an emergency, evidence may be developed that was not originally heard by an agency. If it confirms the agency's conclusion, then the court should uphold the rule. The court, however, cannot consider new reasons for finding an emergency. The court has no authority to find an emergency, only an agency does. New reasons must be considered by the agency, not the court.

After considering whatever evidence supports an agency reason for finding an imminent peril, the court must be able to conclude that whatever is factually found can truly be characterized as an imminent peril. Like negligence, this is a mixed question of law and fact, meaning that it requires both deciding the facts and evaluating the facts to arrive at a characterization. The court must defer to an agency's decision about the facts, as long as it is supported by some evidence.

By the same token, deference is owed to an agency's characterization of the facts. After all, an agency is expressly authorized to promulgate an emergency rule if it finds an imminent peril. In such a case, an agency is pursuing its mandate within the area of its expertise. The court must not merely substitute its evaluation for that of the agency.

There are, however, limits. Characterization of a state of affairs as an imminent peril to public welfare is not a question peculiarly within the expertise of any agency. Moreover, the question is ultimately one of law:

Did the legislature intend for problems such as the problem found by an agency to be addressed by an emergency rule. This is a question appropriately reviewed by the court. Section 12 authorizes the court to determine the validity of rules, and expressly includes emergency rules. Express mention of emergency rules is telling. Plainly the legislature wants the judicial branch to review promulgation of emergency rules.

While the legislature has delegated certain of its authority to make rules to agencies, it is distrustful of these agencies. The legislature has therefore assigned to its sister branch of government, the judicial branch, the responsibility to stand watch to make sure agencies that are exercising authority delegated by the legislature do so only on terms set forth by the legislature. Thus the court has a duty to review an agency's finding of imminent peril. *See River Road Neighborhood Ass'n v. South Texas Sports*, 720 S.W.2d 551 (Tex. App.--San Antonio 1986, writ dism'd)(review of emergency under Open Meetings Act).

When an agency declares an imminent peril it may adopt a rule with no notice and no hearing. In the absence of an imminent peril, the agency must give thirty days notice and a hearing before it adopts a rule. Thus, when the matter is very serious, but something short of an imminent peril, an agency can still enact a rule within thirty days. In this particular case, even assuming that providing the full process takes longer than the minimum of thirty days,

22

23

a rule of the sort before the court could be adopted within sixty to ninety days.

Thus, the question is whether the problem that is confronted by the board of insurance is so serious that it justifies acting with little notice, a brief hearing, and little deliberation, or can the public suffer the problem for thirty to ninety days while the board provides the adequate notice, full hearing, and careful deliberation required by APTRA. Keeping in mind that notice, hearing and deliberation is required because it produces good rules, the problem identified by the board does not justify the short-cut procedure.

Here the concern is one of "public welfare." No health or safety concerns were cited by the board. The danger to the "public welfare" identified by the board is that without the emergency rule "there will be a significant segment of the driving population for which insurance will not be available at an affordable cost. As a result, some people will remain uninsured and at risk under the new enforcement provisions."

Understanding the exact nature of the emergency is the first step in the court's review. The emergency is not that some people will not have liability insurance and therefore will not be able to compensate accident victims. We have long known that many people do not have liability insurance. This situation is not an imminent peril but a chronic problem that the legislature has been trying to address for years. It is the legislature's most recent step to solve this problem that the board claims has caused an imminent peril.

24

The peril to public welfare cited by the board is the result of House Bill 2, effective September 1, 1991, which strengthens the Motor Vehicle Safety-Responsibility Act by adding stiffer penalties and more effective enforcement tools. Beginning September 1 people who cannot get insurance will be faced with either not driving or driving in violation of the strengthened law. As a result: Some people will choose not to drive. Due to necessity, some people will drive without liability insurance. Some number of these people will be caught. Some number of these people will be punished.

Section 10.05 of House Bill 2 sets out the "risk" of enforcement. A first conviction is a misdemeanor punishable by a fine of not less than $175 and not more than $350. Any subsequent offense is a misdemeanor punishable by a fine of not less than $350 and not more than $1000. If a person is economically unable to pay the fine, the court may reduce the fine to less than $175.00. On a second or subsequent conviction, the motor vehicle driven must be impounded for 180 days (6 months) at a cost of $15 a day ($2700). Upon proof of financial responsibility, a vehicle can be released short of 180 days. In addition, under the amended act a person cannot obtain or renew vehicle registration, a driver's license, or a safety inspection sticker without proof of financial responsibility.

The results of enforcement will be incremental, not immediate. As a group, uninsured drivers are not going to suffer much in the first sixty to ninety days under the amended Motor Vehicle Safety-Responsibility Act.

25

The evidence shows that there are some three million uninsured drivers. Many will obtain insurance. Of those who do not, most will not be caught driving without insurance between September 1 and December 1. Of those caught, fewer will be convicted. Of those convicted, the punishment is not steep, particularly for those found unable to pay a fine. Even fewer will be caught twice so that their car is impounded.

The court does not intend to minimize what a serious personal problem the strengthened act presents for those who are caught in violation of its provisions, but the court cannot characterize this certainly serious personal problem as an imminent peril to public welfare. Significantly, neither the board or either defendant-intervenor presented any evidence at trial that between September 1 and the conclusion of the trial on October 30, a period of sixty days, enforcement of the act has resulted in actual hardship for any significant number of people. Indeed, there was almost no evidence of immediate hardship. The board could not have reasonably expected the new law to actually effect many people within its first ninety days. Over time--yes, immediately--no.

The Committee for a Just Auto Insurance argues that the Texas Motor Vehicle Safety-Responsibility Act will have tremendous adverse economic impact on the poor in the Rio Grande Valley. This problem, however, was not found by the board as a reason for its finding of an imminent peril. The court therefore cannot consider the issue.

26

Moreover, the hard truth is that this adverse economic impact is the result of the new law itself. Nothing the board can do will significantly ameliorate the effect of the law. To the extent the board can do anything, the effect of the new law will be so incremental as to give the board time to comply with the full procedure of APTRA. Nothing was going to happen so fast that the board could not have taken thirty to ninety days from September 1 to promulgate rules through the full procedure of APTRA. The problem is just not an emergency.

Words have both denotations and connotations. Here the board is trying to take a public-policy problem and force it into the denotation we would normally give to "imminent peril to the public welfare." But the problem does not fit the concept, particularly when one considers the connotation of "imminent peril to the public welfare." Those words suggest a soon-to-be-upon-us public disaster, not merely a serious public policy problem.

Indeed, if this problem is an imminent peril to public welfare, then almost all public policy problems are imminent perils to public welfare and can be addressed by the short-cut emergency procedures rather than the full deliberative process required by APTRA. Under such reasoning, the more serious the public policy problem, the less likely it is to get the full consideration that the legislature mandates in APTRA. The legislature, however, intended full consideration for all but the most serious disasters.

27

## Notice and Hearing

The board argues that it did provide some notice and hearing. If there is not an imminent peril, however, then nothing short of full compliance with APTRA is adequate.

To hammer home the importance of full compliance with APTRA, consider the proceedings that were had. On September 18 the board filed notice with the secretary of state. On September 24 this notice was published. The notice was for a hearing two days later on September 26 "to consider emergency rule adoption...regarding automobile insurance." Such notice does not begin to comply with APTRA. No fair person could argue that such notice was adequate. The hearing held two days after notice was published lasted from 8:30 a.m. to 12:15 p.m., less than four hours. The issue is complicated, but the board meeting was short because few appeared to be heard and no one was ready.

## Reasonable Diligence

Imminent means soon but not yet. If a problem is here it is not imminent but present. A present problem is not an imminent peril, regardless how serious. The legislature does not want an agency to address present problems with emergency rules. Full procedure is required. Of course, the court is not suggesting that an agency cannot address by emergency rule an emerging problem that is a peril to public health, safety, or welfare. Obviously the fire engine is not dispatched until there is a fire. Long-standing problems, however, cannot be classed as "imminent" perils.

28

Likewise, a distant problem is not an imminent peril. If the problem is distant enough to allow for the full procedure of APTRA, then the full procedure must be followed.

As a corollary, an agency cannot allow a distant problem to become an imminent peril by inaction and then promulgate an emergency rule. If agencies could ignore distant problems until they become imminent perils, they could escape compliance with the full procedure of APTRA. Under the Open Meetings Act, a board cannot post for an emergency meeting when it reasonably could have avoided the need for an emergency meeting by meeting sooner. *River Road Neighborhood v. South Texas Sports*, 720 S.W.2d at 557. Likewise, a board cannot promulgate emergency rules when it reasonably could have avoided the need to use its emergency power by acting sooner.

Whether an agency has allowed a distant problem to become an imminent peril by inaction is determined by an objective test. In other words, the question is not whether an agency actually recognized a problem in time to address it through full procedure; instead, the test is whether an agency reasonably could and should have foreseen the problem in time to address it by full procedure.

The reason why the test is objective is three-fold. First, an objective test encourages agencies to act diligently. A subjective test would foster lack of diligence. Second, the public's right to participate in rulemaking should not

29

turn on an agency's actual state of mind, but should be fixed. If an agency could and should have reasonably foreseen the need to act, then the public should have the right to participate in the process.

Finally, determining state of mind of an agency is not a task the court should undertake. Determining state of mind is always difficult. It is particularly difficult when the state of mind is of a governmental agency. To make such a determination, the parties would have to engage in discovery about actual state of mind. Such discovery of agencies, many of whom are headed by political officers, is not a process in which the judicial branch should be involved. Accordingly, the court will confine itself to asking what an agency could and should have reasonably foreseen.

To say that an agency is prohibited from making emergency rules to address a problem that it could and should have reasonably foreseen may send chills down the spine of every rulemaker. Everything is foreseeable with hindsight. The Monday morning quarterback always wins the game. Moreover, the legislature often assigns an agency a vast scope of responsibility but gives it limited resources, a situation with which the judicial branch can readily identify. Furthermore, the public suffers the damage of a peril that goes unaddressed if an agency fails to act diligently and therefore loses the opportunity to act.

Keeping in mind the difficult job agencies face and the need to protect the public, the court will construe the evidence in favor of the agency.

30

Nevertheless when the court is convinced that an agency acting with reasonable diligence could and should have foreseen the peril in time to address it through full procedure, the court must strike down an emergency rule.

If the court blinks and allows agencies to wait until problems become imminent perils before making rules, then the public will lose its right to participate in rulemaking. If the court refuses to blink, agencies will act diligently. In those rare instances when they do not, the public will not suffer because it can look to its Governor to call into session its legislature to address any serious problem.

Here, the board, acting with reasonable diligence, could and should have foreseen the particular problem long before it became an imminent peril. House Bill 2 was passed on May 2 and approved on June 6, to be effective September 1. The board had over five months to anticipate and address any problem caused by House Bill 2.

The underwriting practice attacked here has been the subject of a national debate between regulators and the insurance industry for a decade. With reasonable diligence the Texas board could and should have been informed about this national debate.

Indeed, the Texas board had such specific knowledge. The manager of the board's automobile office advised the board's commissioner in April that the practice attacked here is common and needed to be addressed by a rule.

31

The board proceeded to move forward with full rulemaking, going so far as to draft a rule for a meeting on September 26. Notice of this rule was never filed. Suddenly, on September 18, 1991, the board moved to act on an emergency basis.

The board says that it failed to realize how these two issues related and the dimension of the problem until mid-September. Acting with reasonable diligence, however, the board could and should have known. The board knew in the Spring of 1991 that millions of uninsured drivers would need insurance as a result of House Bill 2. The board knew in the Spring of 1991 that companies had an underwriting practice of denying coverage to previously uninsured drivers. The board could and should have added two and two to get four. Furthermore, if the board had studied the experience of other states, it would have been well-informed of the relationship between mandatory insurance laws and refusing to insure previously uninsured drivers. Having failed to act with reasonable diligence, the board cannot now declare an emergency and deny the public its right to participate in whatever solutions are developed.

## Overbreadth

The Motor Vehicle Safety-Responsibility Act only requires a driver to carry minimum liability insurance. Yet the board has used the alleged emergency to adopt a rule that covers situations far beyond the emergency. The board's rule is not limited to underwriting for minimum liability

insurance. It includes all forms of insurance--underinsured and uninsured, personal injury protection, collision, and comprehensive.

This very issue was raised by Board Member Reynolds when the rule was adopted. The rationale offered to the board for going beyond the emergency was bold--if the practice outlawed is discriminatory for liability insurance, it is discriminatory for other kinds of coverage. (See Def. Exh. 3 at 148-152.) While this may be true, it is unresponsive to board member Reynold's objection. An emergency rule must be written only to address the imminent peril found. The occasion of an imminent peril cannot be used to write a rule addressing nonemergency issues. Here the board intentionally did exactly that.

After the fact, for this trial, a new rationale for going beyond liability insurance was developed. The argument goes: Some companies require a consumer to buy additional coverage before the company will sell liability coverage, so the rule must cover all auto insurance. The extent of this tieing practice is unknown. More important, a narrower rule could still easily be written. Such a rule might prohibit requiring a person to buy other coverage to obtain minimum liability insurance. A narrower rule was not considered, however, because no effort was made to limit the rule to the peril.

## Injunction

The board is not liable to plaintiffs for money damages, so plaintiffs have no adequate remedy at law. Losses therefore are irreparable. Furthermore,

under APTRA the legislature has declared the public policy of this state to favor public participation in rulemaking. Here public participation has been denied. That alone is an irreparable harm. From the express legislative authorization in section 12 for the court to review the validity of emergency rules, the court infers that the legislature intends the court to make such review effective by providing injunctive relief when necessary. Accordingly, the court concludes that the board must be enjoined from enforcing its invalid rule.

## Conclusion

On October 25 the board filed with the secretary of state notice of a proposed rule to address the problem of companies denying insurance to those who have not previously had coverage. After notice, hearing, and justification, the board may or may not adopt some rule. In the next thirty to ninety days this question can be resolved by the board. The court expresses no opinion whether the board has the authority to promulgate the proposed rule or whether the evidence supports promulgation of such a rule. Resolution of those issues must await action by the board.

Signed 31st day of October, 1991.

/s/F. Scott McCown
F. SCOTT McCOWN
Judge Presiding

34

APPENDIX 7

Vernon's Texas Statutes and Codes Annotated
    Government Code (Refs & Annos)
        Title 10. General Government (Refs & Annos)
            Subtitle A. Administrative Procedure and Practice
                Chapter 2001. Administrative Procedure (Refs & Annos)
                    Subchapter B. Rulemaking

V.T.C.A., Government Code § 2001.023

§ 2001.023. Notice of Proposed Rule

Currentness

(a) A state agency shall give at least 30 days' notice of its intention to adopt a rule before it adopts the rule.

(b) A state agency shall file notice of the proposed rule with the secretary of state for publication in the Texas Register in the manner prescribed by Chapter 2002.

**Credits**
Added by Acts 1993, 73rd Leg., ch. 268, § 1, eff. Sept. 1, 1993.

**Editors' Notes**

**REVISOR'S NOTE**

**2008 Main Volume**

The revised law omits the source law's reference to the secretary of state's duty to publish notice of a proposed rule in the Texas Register because that duty is established by Section 2002.011 of this subtitle.

Notes of Decisions (7)

V. T. C. A., Government Code § 2001.023, TX GOVT § 2001.023
Current through the end of the 2013 Third Called Session of the 83rd Legislature

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

APPENDIX 8

Vernon's Texas Statutes and Codes Annotated
Government Code (Refs & Annos)
Title 10. General Government (Refs & Annos)
Subtitle A. Administrative Procedure and Practice
Chapter 2001. Administrative Procedure (Refs & Annos)
Subchapter B. Rulemaking

V.T.C.A., Government Code § 2001.024

§ 2001.024. Content of Notice

Currentness

(a) The notice of a proposed rule must include:

(1) a brief explanation of the proposed rule;

(2) the text of the proposed rule, except any portion omitted under Section 2002.014, prepared in a manner to indicate any words to be added or deleted from the current text;

(3) a statement of the statutory or other authority under which the rule is proposed to be adopted, including:

(A) a concise explanation of the particular statutory or other provisions under which the rule is proposed;

(B) the section or article of the code affected; and

(C) a certification that the proposed rule has been reviewed by legal counsel and found to be within the state agency's authority to adopt;

(4) a fiscal note showing the name and title of the officer or employee responsible for preparing or approving the note and stating for each year of the first five years that the rule will be in effect:

(A) the additional estimated cost to the state and to local governments expected as a result of enforcing or administering the rule;

(B) the estimated reductions in costs to the state and to local governments as a result of enforcing or administering the rule;

(C) the estimated loss or increase in revenue to the state or to local governments as a result of enforcing or administering the rule; and

(D) if applicable, that enforcing or administering the rule does not have foreseeable implications relating to cost or revenues of the state or local governments;

(5) a note about public benefits and costs showing the name and title of the officer or employee responsible for preparing or approving the note and stating for each year of the first five years that the rule will be in effect:

(A) the public benefits expected as a result of adoption of the proposed rule; and

(B) the probable economic cost to persons required to comply with the rule;

(6) the local employment impact statement prepared under Section 2001.022, if required;

(7) a request for comments on the proposed rule from any interested person; and

(8) any other statement required by law.

(b) In the notice of a proposed rule that amends any part of an existing rule:

(1) the text of the entire part of the rule being amended must be set out;

(2) the language to be deleted must be bracketed and stricken through; and

(3) the language to be added must be underlined.

(c) In the notice of a proposed rule that is new or that adds a complete section to an existing rule, the new rule or section must be set out and underlined.

**Credits**
Added by Acts 1993, 73rd Leg., ch. 268, § 1, eff. Sept. 1, 1993. Amended by Acts 1997, 75th Leg., ch. 1067, § 1, eff. Sept. 1, 1997.

Notes of Decisions (14)

V. T. C. A., Government Code § 2001.024, TX GOVT § 2001.024
Current through the end of the 2013 Third Called Session of the 83rd Legislature

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.



APPENDIX 9

> Vernon's Texas Statutes and Codes Annotated
>   Government Code (Refs & Annos)
>     Title 10. General Government (Refs & Annos)
>       Subtitle A. Administrative Procedure and Practice
>         Chapter 2001. Administrative Procedure (Refs & Annos)
>           Subchapter B. Rulemaking

V.T.C.A., Government Code § 2001.029

§ 2001.029. Public Comment

Currentness

(a) Before adopting a rule, a state agency shall give all interested persons a reasonable opportunity to submit data, views, or arguments, orally or in writing.

(b) A state agency shall grant an opportunity for a public hearing before it adopts a substantive rule if a public hearing is requested by:

  (1) at least 25 persons;

  (2) a governmental subdivision or agency; or

  (3) an association having at least 25 members.

(c) A state agency shall consider fully all written and oral submissions about a proposed rule.

**Credits**
Added by Acts 1993, 73rd Leg., ch. 268, § 1, eff. Sept. 1, 1993.

Notes of Decisions (4)

V. T. C. A., Government Code § 2001.029, TX GOVT § 2001.029

Current through the end of the 2013 Third Called Session of the 83rd Legislature

End of Document  © 2015 Thomson Reuters. No claim to original U.S. Government Works.

# APPENDIX 10

Vernon's Texas Statutes and Codes Annotated
  Government Code (Refs & Annos)
    Title 10. General Government (Refs & Annos)
      Subtitle A. Administrative Procedure and Practice
        Chapter 2001. Administrative Procedure (Refs & Annos)
          Subchapter B. Rulemaking

V.T.C.A., Government Code § 2001.033

§ 2001.033. State Agency Order Adopting Rule

Currentness

(a) A state agency order finally adopting a rule must include:

(1) a reasoned justification for the rule as adopted consisting solely of:

(A) a summary of comments received from parties interested in the rule that shows the names of interested groups or associations offering comment on the rule and whether they were for or against its adoption;

(B) a summary of the factual basis for the rule as adopted which demonstrates a rational connection between the factual basis for the rule and the rule as adopted; and

(C) the reasons why the agency disagrees with party submissions and proposals;

(2) a concise restatement of the particular statutory provisions under which the rule is adopted and of how the agency interprets the provisions as authorizing or requiring the rule; and

(3) a certification that the rule, as adopted, has been reviewed by legal counsel and found to be a valid exercise of the agency's legal authority.

(b) Nothing in this section shall be construed to require additional analysis of alternatives not adopted by an agency beyond that required by Subdivision (1)(C) or to require the reasoned justification to be stated separately from the statements required in Subdivision (1).

**Credits**
Added by Acts 1993, 73rd Leg., ch. 268, § 1, eff. Sept. 1, 1993. Amended by Acts 1999, 76th Leg., ch. 558, § 2, eff. Sept. 1, 1999.

Notes of Decisions (42)

V. T. C. A., Government Code § 2001.033, TX GOVT § 2001.033
Current through the end of the 2013 Third Called Session of the 83rd Legislature

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

APPENDIX 11

> Vernon's Texas Statutes and Codes Annotated
>    Government Code (Refs & Annos)
>      Title 10. General Government (Refs & Annos)
>        Subtitle A. Administrative Procedure and Practice
>          Chapter 2001. Administrative Procedure (Refs & Annos)
>            Subchapter B. Rulemaking

V.T.C.A., Government Code § 2001.034

§ 2001.034. Emergency Rulemaking

Currentness

(a) A state agency may adopt an emergency rule without prior notice or hearing, or with an abbreviated notice and a hearing that it finds practicable, if the agency:

   (1) finds that an imminent peril to the public health, safety, or welfare, or a requirement of state or federal law, requires adoption of a rule on fewer than 30 days' notice; and

   (2) states in writing the reasons for its finding under Subdivision (1).

(b) A state agency shall set forth in an emergency rule's preamble the finding required by Subsection (a).

(c) A rule adopted under this section may be effective for not longer than 120 days and may be renewed once for not longer than 60 days. An identical rule may be adopted under Sections 2001.023 and 2001.029.

(d) A state agency shall file an emergency rule adopted under this section and the agency's written reasons for the adoption in the office of the secretary of state for publication in the Texas Register in the manner prescribed by Chapter 2002.

**Credits**
Added by Acts 1993, 73rd Leg., ch. 268, § 1, eff. Sept. 1, 1993.

V. T. C. A., Government Code § 2001.034, TX GOVT § 2001.034
Current through the end of the 2013 Third Called Session of the 83rd Legislature

End of Document        © 2015 Thomson Reuters. No claim to original U.S. Government Works.

APPENDIX 12

> Vernon's Texas Statutes and Codes Annotated
>   Government Code (Refs & Annos)
>     Title 10. General Government (Refs & Annos)
>       Subtitle A. Administrative Procedure and Practice
>         Chapter 2001. Administrative Procedure (Refs & Annos)
>           Subchapter B. Rulemaking

V.T.C.A., Government Code § 2001.035

## § 2001.035. Substantial Compliance Requirement; Time Limit on Procedural Challenge

### Currentness

(a) A rule is voidable unless a state agency adopts it in substantial compliance with Sections 2001.0225 through 2001.034.

(b) A person must initiate a proceeding to contest a rule on the ground of noncompliance with the procedural requirements of Sections 2001.0225 through 2001.034 not later than the second anniversary of the effective date of the rule.

(c) A state agency substantially complies with the requirements of Section 2001.033 if the agency's reasoned justification demonstrates in a relatively clear and logical fashion that the rule is a reasonable means to a legitimate objective.

(d) A mere technical defect that does not result in prejudice to a person's rights or privileges is not grounds for invalidation of a rule.

**Credits**

Added by Acts 1993, 73rd Leg., ch. 268, § 1, eff. Sept. 1, 1993. Amended by Acts 1999, 76th Leg., ch. 558, § 3, eff. Sept. 1, 1999.

**Editors' Notes**

### REVISOR'S NOTE

## 2008 Main Volume

(1) The revised law substitutes "January 1, 1976," for the source law reference to a rule "hereafter" adopted because the provision became effective on that date.

(2) The source law refers to adoption of a rule "in substantial compliance with this section."The revised law substitutes "Sections 2001.023-2001.034" for "this section" because Section 5 of the source law is revised as Sections 2001.023-2001.034 of this chapter.

Notes of Decisions (14)

V. T. C. A., Government Code § 2001.035, TX GOVT § 2001.035
Current through the end of the 2013 Third Called Session of the 83rd Legislature

**End of Document**        © 2015 Thomson Reuters. No claim to original U.S. Government Works.

APPENDIX 13

---

> Vernon's Texas Statutes and Codes Annotated
>    Government Code (Refs & Annos)
>      Title 10. General Government (Refs & Annos)
>        Subtitle A. Administrative Procedure and Practice
>          Chapter 2001. Administrative Procedure (Refs & Annos)
>            Subchapter B. Rulemaking

V.T.C.A., Government Code § 2001.038

§ 2001.038. Declaratory Judgment

Currentness

(a) The validity or applicability of a rule, including an emergency rule adopted under Section 2001.034, may be determined in an action for declaratory judgment if it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff.

(b) The action may be brought only in a Travis County district court.

(c) The state agency must be made a party to the action.

(d) A court may render a declaratory judgment without regard to whether the plaintiff requested the state agency to rule on the validity or applicability of the rule in question.

(e) An action brought under this section may not be used to delay or stay a hearing in which a suspension, revocation, or cancellation of a license by a state agency is at issue before the agency after notice of the hearing has been given.

(f) A Travis County district court in which an action is brought under this section, on its own motion or the motion of any party, may request transfer of the action to the Court of Appeals for the Third Court of Appeals District if the district court finds that the public interest requires a prompt, authoritative determination of the validity or applicability of the rule in question and the case would ordinarily be appealed. After filing of the district court's request with the court of appeals, transfer of the action may be granted by the court of appeals if it agrees with the findings

of the district court concerning the application of the statutory standards to the action. On entry of an order by the court of appeals granting transfer, the action is transferred to the court of appeals for decision, and the validity or applicability of the rule in question is subject to judicial review by the court of appeals. The administrative record and the district court record shall be filed by the district clerk with the clerk of the court of appeals. The court of appeals may direct the district court to conduct any necessary evidentiary hearings in connection with the action.

**Credits**
Added by Acts 1993, 73rd Leg., ch. 268, § 1, eff. Sept. 1, 1993. Amended by Acts 1999, 76th Leg., ch. 894, § 1, eff. Sept. 1, 1999.

Notes of Decisions (69)

V. T. C. A., Government Code § 2001.038, TX GOVT § 2001.038
Current through the end of the 2013 Third Called Session of the 83rd Legislature

End of Document &copy; 2015 Thomson Reuters. No claim to original U.S. Government Works.